UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00160-JAW |
| | ) | |
| MALCOLM A. FRENCH, et al. | ) | |

**ORDER DENYING KENDALL CHASE'S MOTION FOR ACQUITTAL ON COUNT XI OF THE SUPERSEDING INDICTMENT**

On January 24, 2014, a federal jury convicted Kendall Chase and several others of engaging in a conspiracy to manufacture marijuana and of engaging in a conspiracy to distribute marijuana. *Jury Verdict Form* (ECF No. 311). Mr. Chase moves for a judgment of acquittal only on Count Eleven, conspiracy to possess marijuana with intent to distribute. The Court denies Mr. Chase's motion because, viewing the evidence in the light most favorable to the guilty verdict and drawing all reasonable inferences in its favor, the jury could reasonably have found that the Government proved all the elements of the conspiracy count beyond a reasonable doubt.

I.      **LEGAL STANDARD**

Federal Rule of Criminal Procedure 29(a) instructs the Court to enter a judgment of acquittal if "the evidence is insufficient to sustain [the] conviction." In making this determination, the Court must "view the evidence and draw all reasonable inferences in the light most favorable to the verdict." *United States v. McGauley*, 279 F.3d 62, 66 (1st Cir. 2002). The Court may not disturb the jury's

verdict if "a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." *United States v. O'Brien*, 14 F.3d 703, 706 (1st Cir. 1994). The Court must "consider all the evidence, direct and circumstantial, and resolve all evidentiary conflicts in favor of the verdict." *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997).

Count Eleven of the superseding indictment charged Mr. Chase with conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. To prove the underlying crime of possession with intent to distribute, the Government had to establish beyond a reasonable doubt that one or more conspirators (1) actually or constructively possessed the marijuana; (2) did so with a specific intent to distribute it; and (3) did so knowingly or intentionally. *Id.* § 841(a)(1); *United States v. Latham*, 874 F.2d 852, 863 (1st Cir. 1989). To prove the conspiracy, the Government had the burden to prove beyond a reasonable doubt that (1) the agreement specified in the indictment existed between at least two people; and (2) Mr. Chase willfully joined in that agreement. 21 U.S.C. § 846; *United States v. Piper*, 35 F.3d 611, 614-15 (1st Cir. 1994); *United States v. Rivera-Santiago*, 872 F.2d 1073, 1079-80 (1st Cir. 1989).

"Because of the secretive nature of the crime, it is recognized that the agreement may be express or tacit. The agreement, whether tacit or express, may be proven by circumstantial as well as express evidence." *Rivera-Santiago*, 872 F.2d at 1079. Furthermore, if the Government established that Mr. Chase joined the conspiracy, it was entitled to hold him responsible for all the acts of the

conspirators in furtherance of the conspiracy. *United States v. Baines*, 812 F.2d 41,

42 (1st Cir. 1987).[1]

## II.     FACTS

### A.     Procedural Posture

On January 20, 2014, at the close of the Government's case in chief, Mr.

Chase moved for acquittal under Rule 29, *Mot. of Def., Kendall Chase, for J. of*

*Acquittal* (ECF No. 295), which the Court denied orally.  The jury returned a verdict

of guilty on Count Eleven on January 24, 2011.  *Jury Verdict Form* at 6-7 (ECF No.

311).  Mr. Chase renewed his motion for acquittal on February 5, 2004, as to Count

Eleven only.  *Mot. of Def., Kendall Chase, for J. of Acquittal* (ECF No. 316) (*Def.'s*

*Mot.*).[2]  The Government replied in opposition on February 20, 2014.  *Gov't's*

*Objection to the Def.'s Renewed Mot. for J. of Acquittal* (ECF No. 324) (*Gov't's*

*Opp'n*).  Mr. Chase did not reply to the Government's opposition.

### B.     Evidence at Trial

When police raided the marijuana grow site in Township 37, Maine on

September 22, 2009, they found 2,943 carefully tended marijuana plants.  Special

Agent Jon Richards testified that each plant would have yielded a half pound of

marijuana, and Fai Littman testified that in 2008 and 2009 he was buying

---

[1]        "[A] conspiracy is like a train.  When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight-or conduct-regardless of whether he is aware of just what it is composed." *Baines*, 812 F.2d at 42.

[2]        The jury also found Mr. Chase guilty on Count One of the superseding indictment, charging conspiracy to manufacture of marijuana, and not guilty on Count Two, charging actual manufacture of marijuana. *Jury Verdict Form* (ECF No. 311).  Mr. Chase does not challenge the sufficiency of the evidence supporting the jury's guilty verdict as to Count One. *Def.'s Mot.* at 3.

marijuana for resale from Mr. Chase's co-conspirator Malcolm French for $2,500 per pound.

Records from Griffin Greenhouse showed that the conspirators purchased 4,590 bags of peat moss between 2006 and 2009. Miguel Roblero, one of the co-conspirators who cooperated with the Government, testified that he and his compatriots would put one and a half bags of peat moss into each "nest" for marijuana plants. This would produce 3,060 "nests." With three plants in each nest, as Mr. Roblero testified, the jury could reasonably have concluded that there would have been approximately 9,180 plants. If each plant produced half a pound of saleable marijuana, the total output from 2006 to 2009 would have been approximately 4,590 pounds. With a wholesale street value of $2,500 per pound, the total output in dollar terms would have been approximately $11,475,000.00.

The jury heard testimony from Winston McTague, a Government witness, that put Mr. Chase at the grow site in Township 37 repeatedly during the 2006 growing season. According to Mr. McTague, Mr. Chase's role in 2006 was to assist the workers in planting the marijuana plants and to evaluate the plants to determine when they were ready to harvest. He also testified that Mr. Chase assisted in "bagging" the marijuana. Mr. McTague also testified that Mr. Chase directly participated, with one other conspirator, in a sale of ten pounds of marijuana for "20,000"; the jury could reasonably have inferred that this was 20,000 dollars. This works out to a unit price of $2,000 per pound, which is roughly

consistent with Mr. Littman's testimony that he purchased marijuana wholesale from Mr. French for $2,500 per pound.

Mr. Roblero, a migrant Mexican laborer, testified that he worked at the marijuana grow in Township 37 in 2008 and 2009.[3]  He testified that when he first started working in the conspiracy, cleaning marijuana in a warehouse, Mr. Chase was among those who supervised and observed his work.  He also testified that in 2009, Mr. Chase would visit the grow site approximately once per week.  According to Mr. Roblero, Mr. Chase assisted with planting and spreading pest control chemicals.

## III.    POSITION OF THE PARTIES

### A.    Mr. Chase

Mr. Chase admits that he has no legal basis to challenge the jury verdict on Count One, engaging in a conspiracy to manufacture marijuana.  *Def.'s Mot.* at 3 ("Viewing the evidence in the light most favorable to the Government, the jury could rationally infer that Kendall Chase conspired to manufacture marijuana").  Mr. Chase's motion is directed solely against the conviction for engaging in a conspiracy to distribute as opposed to manufacture the marijuana.  *Id.* ("There remains no reliable evidence to support that the Defendant conspired to possess with the intent to distribute").

---

[3]      Mr. Roblero did not refer to Township 37 as such, instead calling the grow site "the mountain."  However, his description of the site was otherwise consistent with the description by the law enforcement officers who raided the site in 2009, and the jury was entitled to infer that Mr. Roblero worked at the same grow site.

Mr. Chase argues that the quantity of marijuana cannot, by itself, support an inference that he intended to distribute the marijuana, and that production and distribution require different factual proof. *Def.'s Mot.* at 3. He suggests that "[t]here must be a point where the evidence reveals some fact above and beyond manufacture and is otherwise indicative of possession with intent [to distribute]." *Id.* He urges that there is no evidence sufficient to prove his intent to distribute.

Mr. Chase also argues that "there is no reliable evidence that [Mr.] Chase possessed any of the marijuana or conspired to possess with the intent to distribute." *Id.* at 5. In Mr. Chase's view, the mere cultivation of the plants does not show possession; "[t]here are no witnesses who identify the Defendant being in possession of any amount of marijuana during [the period of the conspiracy]." *Id.* He posits that "[n]either Mr. Littman nor any other witness identified [Mr.] Chase as having any involvements with or discussions involving bulk marijuana of any sort." *Id.*

## B. The Government

The Government takes as "well settled" the proposition that "intent to distribute can be inferred from drug quantity." *Gov't's Opp'n* at 2. It points to the testimony of Messrs. McTague and Roblero that Mr. Chase was involved in the conspiracy to manufacture marijuana, and to the extremely large quantity of marijuana actually produced, as evidence of the conspirators' intent to distribute. *Id.* at 2-3. The Government also highlights Mr. McTague's testimony that Mr. Chase and another co-conspirator actually engaged in at least one actual sale of ten pounds of marijuana. *Id.* at 4. Finally, the Government argues that, even absent

this testimony, it would be reasonable for the jury to infer from Mr. Chase's manufacturing activities that he constructively possessed quantities of marijuana consistent with distribution. *Id.*

## IV.  DISCUSSION

To prove the crime underlying the conspiracy to possess with intent to distribute, the Government had to establish that one or more co-conspirators actually or constructively possessed the marijuana plants, did so knowingly or intentionally, and had the specific intent to distribute them.  Just recently, the First Circuit addressed the factors that allow an inference of possession of drugs with the specific intent to distribute.  *United States v. Bobadilla-Pagán*, No. 12-1447, 2014 U.S. App. LEXIS 5797 (1st Cir. Mar. 28, 2014):

> An inference of intent to distribute may be drawn from the circumstances surrounding possession, including the drug's quantity (*i.e.*, whether it is too large for personal use only), the drug's purity, the defendant's statements or conduct, or the number of people involved and their relationship to the defendant.

*Id.* at *14-15.  The law seeks to distinguish between possession for personal use and possession to distribute.  *See id.* at *15.  In *Bobadilla-Pagán*, the First Circuit upheld a conviction for possession with the intent to distribute for a defendant who possessed 210 grams of marijuana.  *Id.* at *16-17.  The First Circuit has also previously concluded that a jury was justified in finding a defendant guilty of possession of marijuana with the intent to distribute when the defendant possessed two pounds or roughly 900 grams of marijuana.  *United States v. Cormier*, 468 F.3d 63, 71 (1st Cir. 2006).  Here, Mr. Chase does not contest the propriety of the jury

verdict that found he was involved in a conspiracy to manufacture 1,000 or more marijuana plants, a drug quantity substantially in excess of what the First Circuit has found sufficient for an inference of distribution. Moreover, in this case, the evidence that supported the conceded manufacturing charge is echoed in the evidence that supports the distribution charge.

The trial evidence showed that Mr. Chase—with Mr. French, Rodney Russell, and others—participated in a large scale marijuana production operation. Mr. McTague testified that Mr. Chase (with a person named Mike Smith) was the "brains" behind the marijuana grow operation. He said that Mr. Chase (and Mr. Smith) knew how to grow the marijuana and knew how to "make it good." According to Mr. McTague, Mr. Chase and Mr. Smith told the workers when to cut down the marijuana plants. Moreover, Mr. McTague expressly testified that Mr. Chase was involved in selling marijuana, specifically ten pounds for which Mr. Chase and Mike Smith received a total of $20,000. This cumulative testimony is more than enough to withstand Mr. Chase's attack on the distribution verdict. The Court must view Mr. McTague's testimony in the light most favorable to this verdict; Mr. McTague testified that Mr. Chase not only helped grow hundreds of marijuana plants, but also—with Mike Smith—sold $20,000 worth of the product. Although Mr. Chase expressed deep reservations at trial about Mr. McTague's credibility, it was within the province of the jury to resolve credibility issues. Crediting Mr. McTague's testimony, as the Court is required to do, it is difficult to

see how Mr. Chase is able to claim that the verdict is not supported by competent evidence.

Mr. Chase offers the Tenth Circuit case of *United States v. Zamora*, 784 F.2d 1025 (10th Cir. 1986), for the proposition that "'manufacture and possession with intent to distribute are distinct offenses for which different facts must be proven.'" *Def.'s Mot.*at 4 (quoting *Zamora*, 784 F.2d at 1029). While that may be correct as far as it goes, it is also true that the Tenth Circuit affirmed the convictions. *Zamora*, 784 F.2d 1028-29, 1031. The *Zamora* Court wrote:

> The Court also said in [*United States v.*] *Ortiz*, [445 F.2d 1100 (10th Cir. 1971)], that "one should not be required to take leave of his senses when he ascends to the bench." [*Id.*] at 1105. In this case, the evidence is clear that appellant had substantial amounts of methamphetamine in bottles, and sufficient P2P to produce amounts sufficient without more to create a reasonable inference that appellant did intend to sell methamphetamine. Whether or not some third party could be found to purchase the substance is irrelevant if appellant possessed the substance with the intent to distribute it.

*Zamora*, 784 F.2d at 1029. It is a reasonable inference that if Mr. Chase was involved in growing more than 1,000 marijuana plants, he and his fellow conspirators were doing so to distribute them.

Moreover, there is abundant evidence, beyond cultivation, of the conspirators' possession with intent to distribute. Because Count Eleven charged Mr. Chase with participating in a conspiracy, not with himself possessing with intent to distribute, the Government only had to prove that the purpose of the conspiracy was to possess with intent—not that Mr. Chase himself did so. The jury was entitled to credit Mr. McTague's testimony that Mr. Chase engaged in a sale of the marijuana—but even

9

without that testimony, there was evidence that other members of the conspiracy possessed marijuana, and not only had a specific intent to distribute it but actually did distribute it.

In addition to finding beyond a reasonable doubt that there existed an agreement to possess marijuana with the intent to distribute it, the jury also had to find that Mr. Chase willfully joined in that agreement. The jury could reasonably have inferred he did so from (1) the evidence of his participation in the cultivation that preceded the distribution and (2) Mr. McTague's testimony that Mr. Chase actually distributed the product of their labors. This is circumstantial evidence, but evidence of state of mind is almost always circumstantial. *See Rivera-Santiago*, 872 F.2d at 1079. Here, the evidence was sufficient to prove beyond a reasonable doubt that Mr. Chase willfully joined the agreement.

Mr. Chase finally argues that "there is no reliable evidence that [Mr.] Chase possessed any of the marijuana or conspired to possess with the intent to distribute." *Def.'s Mot.* at 5. Mr. Chase's phrasing of this assertion implicitly asks the Court to make a credibility determination against Mr. McTague. Mr. McTague was not a perfect witness, but the reliability of his testimony was a matter for the jury, not this Court. *McGauley*, 279 F.3d at 66-67. Though the jury was entitled to decide Count Eleven either way, its verdict—rationally based on sufficient evidence—is entitled to respect.

**V.      CONCLUSION**

The Court DENIES Mr. Chase's Motion for Judgment of Acquittal (ECF No. 316).

SO ORDERED.

> /s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> CHIEF UNITED STATES DISTRICT JUDGE

Dated this 19th day of May, 2014